AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Delaware

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Information Associated with Cellular Device Number
302-841-7963, in the Custody of Verizon, described
more particularly in Attachment A

)
)
)
)
)
)



SEALED

UNSEALED
1/25/12 KJK

Case No. 22-05M

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.  This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A)(i).

located in the _____ District of _____ Delaware _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a) | Distribution of a Controlled Substance |
| 21 U.S.C. § 846 | Conspiracy to Distribute a Controlled Substance |

FILED

The application is based on these facts:
see attached affidavit

JAN 1 0 2022

U.S. DISTRICT COURT DISTRICT OF DELAWARE

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Christopher Thiel*
Applicant's signature

SA Christopher Thiel, DEA
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: January 10, 2022

*Christopher J. Burke*
Judge's signature

City and state:  Wilmington, Delaware

Hon. Christopher J. Burke, United States Magistrate Judge
Printed name and title

**AFFIDAVIT IN SUPPORT OF**

**APPLICATION FOR A SEARCH WARRANT**

I, Christopher Thiel, a Special Agent ("SA") with the Drug Enforcement Administration

("DEA"), being duly sworn, depose and state:

BACKGROUND AND TRAINING

1.   I am investigative or law enforcement officer of the United States within the

meaning of 18 U.S.C. § 2510(7) and Federal Rule of Criminal Procedure 41, and am empowered

by law to conduct investigations of, and to make arrests for, offenses in Titles 18 and 21 of the

United States Code. I am presently employed as a Special Agent for the Drug Enforcement

Administration (DEA).

2.   I have been a Special Agent with the DEA for approximately two (2) years. I

attended the new agent training program at the DEA Academy in Quantico, Virginia. I have

received on-the-job training in narcotics trafficking, conspiracy, and distribution investigations.

I have participated in certain aspects of drug investigations, including the use of confidential

sources and undercover officers, physical surveillance, electronic surveillance, the execution of

search and arrest warrants, the use of court-ordered intercepts of wire communications and

investigative interviews.

3.   Since September 2020, I have been assigned to the Dover, Delaware Post of Duty

of the Philadelphia Division of the DEA, where I have been responsible for investigating drug,

violent crime, and criminal enterprise offenses. During my career in law enforcement, I have

become familiar with the methods and techniques associated with the distribution of narcotics,

the laundering of drug proceeds, and the organization of drug conspiracies. I have participated in

numerous search warrants, which has led to the collection of valuable evidence, fruits, and

instrumentalities of drug trafficking. I am one of the case agents assigned to this investigation.

The information contained in this affidavit comes from my own personal observations and from the observations of other law enforcement agents and officers involved in this investigation as well as from the review of written reports of investigations, the review of telephone toll records and other records referenced herein.

4. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided directly to me, or was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Such statements are stated in substance, unless otherwise indicated. I have not included every fact known to me about this investigation.

## INTRODUCTION

5. The Drug Enforcement Administration is currently investigating Guadalupe TORRES ("TORRRES") for violations of federal drug laws, including 21 U.S.C. §§ 841(a) (distribution of controlled substances) and 846 (conspiracy to distribute controlled substances) (hereinafter, "the Target Offenses"), committed by TORRES and others in the District of Delaware, and elsewhere.

6. I submit this affidavit in support of an application for an order pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A),₁ directing Verizon to assist agents of the Drug Enforcement Administration by providing all information, facilities and technical assistance needed to ascertain the physical location of the following cellular telephone: a Verizon cellular telephone with the number 302-841-7963 (hereinafter "TARGET TELEPHONE") and

₁ The Court has jurisdiction to issue this warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711(3)(A)(i) as it has jurisdiction "over the offense being investigated."

used by TORRES who is the source of supply for the Porfirio JIMENEZ-ARIZMENDI

("JIMENEZ-ARIZMENDI ") Drug Trafficking Organization. The DEA introduced an

undercover law enforcement officer (hereinafter "UC"), who conducted two undercover

purchases of methamphetamine directly from JIMENEZ-ARIZMENDI, one undercover

purchase from JIMENEZ-ARIZMENDI and TORRES, and another undercover purchase directly

from TORRES. The UC and TORRES also arranged two meetings wherein they discussed the

delivery of pound quantities of methamphetamine into Delaware.

7.   As further explained below, TORRES has recently changed his number to the

TARGET TELEPHONE from 302-513-1669 (hereinafter "TORRES' OLD NUMBER") and told

the UC that all further negotiations and drug transactions should be performed and discussed by

contacting TORRES at the TARGET TELEPHONE number.

## TECHNICAL INFORMATION

8.   With regard to the TARGET TELEPHONE, the requested location information

should include but is not limited to data indicating the specific latitude and longitude of (or other

precise location information concerning) the TARGET TELEPHONE (the "Requested

Information")2 for a period of thirty (30) days.

9.   I have been advised that Verizon, which services the TARGET TELEPHONE,

has the technical means to promptly generate and record latitude and longitude data with respect

to a specified wireless telephone by measuring its position relative to other known reference

points. This data is the product of techniques that the service provider developed to comply with

2 Such information shall, where other information is unavailable, include records reflecting the

tower and sector ("cell site") used by the TARGET TELEPHONE at the start and end of any

call.

a federal mandate to supply emergency responders with enhanced 911 ("E-911") services. The wireless industry has adopted standards for the precision with which such techniques are expected to locate a wireless telephone.

10. The service provider of the TARGET TELEPHONE, Verizon, uses a "networkbased" location technique, the standards for which require the service provider to establish location within 100 meters two-thirds of the time and to within 300 meters 95% of the time. Based on my training and experience, I know that Verizon can collect E-911 Phase II data about the location of the TARGET TELEPHONE, including by initiating a signal to determine the location of the TARGET TELEPHONE on Verizon's network or with such other reference points as may be reasonably available.

11. When directed by court order, Verizon will provide a designated law enforcement agency with periodically updated latitude and longitude data with respect to the applicable TARGET TELEPHONE. In order to acquire each update, the telephone must be powered on and the service provider must send a signal to its respective TARGET TELEPHONE, resulting in that phone transmitting a response to the provider's network. Where, as here, latitude and longitude data is to be generated at the request of law enforcement, the carrier sends its triggering signal to its respective TARGET TELEPHONE unobtrusively, without alerting the user of the device.

12. Based on my training and experience, I know that Verizon can collect cell-site data about the TARGET TELEPHONE. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication;

(4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

13. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrants therefore include all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

## FACTS ESTABLISHING PROBABLE CAUSE

14. Since December 15, 2020 the DEA has conducted two undercover purchases of methamphetamine directly from JIMENEZ-ARIZMENDI, one undercover purchase from JIMENEZ-ARIZMENDI and TORRES, and another undercover purchase directly from TORRES while TORRES utilized TORRES' OLD NUMBER. Since that time, the UC has had multiple conversations with TORRES related to drug trafficking on the TARGET TELEPHONE.

*December 15, 2020 Undercover Purchase with JIMENEZ-ARIZMENDI*

15. On December 15, 2020 JIMENEZ-ARIZMENDI met with the UC in Ellendale, Delaware and sold the UC 1 ounce of methamphetamine for $1,100.00. The UC and JIMENEZARIZMENDI used telephone communication to orchestrate the transaction. During this transaction, the UC set up another meet time to purchase another ounce of methamphetamine

with JIMENEZ-ARIZMENDI. JIMENEZ-ARIZMENDI also told the UC he is able to sell him cocaine for $1,600.00 per ounce and provided the UC with a sample of cocaine.

*January 14, 2021 Undercover Purchase with JIMENEZ-ARIZMENDI*

16. On January 14, 2021, again JIMENEZ-ARIZMENDI met with the UC in Ellendale, Delaware and sold the UC 1 ounce of methamphetamine for $1,100.00. The UC and JIMENEZ-ARIZMENDI used telephonic communication to orchestrate the transaction. JIMENEZ-ARIZMENDI told the UC that he can get direct shipments of methamphetamine through the mail but does not have an address to send it to. The UC told JIMENEZARIZMENDI that he has an address JIMENEZ-ARIZMENDI can use to send shipments of methamphetamine to. JIMENEZ-ARIZMENDI told the UC he can receive two (2) pounds of methamphetamine at a time through the mail.

*February 18, 2021 Undercover Purchase with JIMENEZ-ARIZMENDI and TORRES*

17. On February 18, 2021 JIMENEZ-ARIZMENDI met with the UC in Ellendale, Delaware and sold the UC 7 ounces of methamphetamine for $7,000.00 and fronted the UC an additional three (3) ounces of methamphetamine. The UC and JIMENEZ-ARIZMENDI used telephonic communication to orchestrate the transaction. JIMENEZ-ARIZMENDI introduced the UC to TORRES. JIMENEZ-ARIZMENDI told the UC that TORRES is his source of supply for methamphetamine. TORRES quoted the UC an approximate price of $9,000 for half a kilogram (1.1 pounds) of methamphetamine. At that time, TORRES provided the UC TORRES' OLD NUMBER and invited the UC to contact him going forward.

*March 4, 2021 Undercover Meeting with TORRES Discussing Drug Trafficking*

18. On March 4, 2021, TORRES used TORRES' OLD NUMBER to communicate

with the UC in order to meet in person to discuss future narcotic transactions. TORRES met with the UC in Lincoln, DE. During the conversation, the UC told TORRES that he can sell the UC pound quantities of methamphetamine for approximately $8,000.00. TORRES told the UC that when he has the methamphetamine and/or when it is shipped, the methamphetamine is concealed in a special box that can hide the detection of the methamphetamine from drug detecting canines. During the conversation with TORRES, the UC stated that TORRES received the shipments of methamphetamine from family in California. The methamphetamine is shipped to an address that is carefully watched by associates of TORRES until the package can be picked up. TORRES constantly receives updates on the location of each package he has sent. During the conversation, TORRES also told the UC that he conducts his business in a very particular way. If he has any issues, TORRES told the UC that he can have paid assassins come from Mexico to the United States to murder anyone he wants to have killed.

### *March 15, 2021 Undercover Purchase with Torres Using TORRES' OLD NUMBER*

19. On March 15, 2021 TORRES used TORRES' OLD NUMBER to communicate with the UC to meet in Lincoln, DE. TORRES sold the UC approximately 10 ounces of methamphetamine for $5,000.00. TORRES also fronted the UC approximately 6 additional ounces of methamphetamine during this same meeting. TORRES told the UC that his shipments are sent to Wilmington, DE and Pennsylvania. During the conversation, TORRES told the UC that if the UC has an address to use, he can send the UC multiple pound shipments of methamphetamine. TORRES stated that the silver bag that the methamphetamine was in is able to conceal the detection of the methamphetamine from drug detecting canines after it is heat sealed.

*Torres Instructs UC to Use the TARGET TELEPHONE to Discuss Future Drug Business*

20. On March 26, 2021 TORRES contacted the UC from the TARGET TELEPHONE
and told the UC that he had changed his number from TORRES' OLD NUMBER to the
TARGET TELEPHONE number. TORRES stated that from this point forward, the UC should
contact TORRES at the TARGET TELEPHONE number to facilitate further drug transactions.
On March 30, 2021, the UC scheduled a meeting with TORRES utilizing the
TARGET TELEPHONE number in order to repay $3,000 for the 6 ounces that TORRES fronted
the UC during the March 15, 2021 transaction. At the subsequent in-person meeting with the
UC, TORRES accepted the $3,000 payment from the UC for the prior drug debt and agreed to
coordinate with the UC the future delivery of methamphetamine and multiple pounds of
marijuana into Delaware. They also discussed that TORRES has a supplier for firearms and was
willing to connect the UC with his firearm supplier. TORRES also stated that he no longer
worked with JIMENEZ-ARIZMENDI in drug distribution and was willing to work with the UC
directly in the distribution of controlled substances.

*March 30, 2021 Undercover meet to look at Methamphetamine Shipment Locations Using*

*TARGET TELEPHONE*

21. On March 30, 2021 TORRES used the TARGET TELEPHONE to meet the UC in
person to look at two different locations the UC had selected to receive shipments of
methamphetamine. After seeing the two locations in person with the UC, TORRES agreed that
one of the locations would be perfect to send parcels containing methamphetamine to. TORRES
told the UC that the UC can order as much methamphetamine as the UC would like. TORRES
said the methamphetamine comes in kilogram quantities. TORRES said that the package will be
tracked and he will let the UC know when it is about to arrive. TORRES told the UC that the

UC will wait for and pick up the package. TORRES also told the UC that he always carries a

firearm with him and he has a specific associate that he purchases his firearms from. TORRES

told the UC if the UC needs any firearms he would put the UC in contact with his associate who

sells firearms.

*April 29, 2021 Prepayment for the shipment of Methamphetamine Using TARGET TELEPHONE*

22. On April 29, 2021, TORRES used the SUBJECT VEHICLE to meet the UC in to

pick up $4,000.00 of United States Currency as prepayment for an order of methamphetamine

the UC was to receive in the mail. The UC provided TORRES with the money and TORRES

agreed to have the shipment of methamphetamine sent via UPS to the pre-arranged location the

parties had agreed upon.

*Shipment of Methamphetamine Coordinated by TORRES using TARGET TELEPHONE and*
*Subsequent May 7, 2021 Seizure*

23. I, along with other law enforcement, was able to track a UPS package sent from

the Fresno area of California to the agreed upon shipping location. On May 7, 2021, I swore to a

search warrant to search this parcel, signed by the Honorable Christopher J. Burke in the District

of Delaware (No. 21-152-M). Inside the parcel was roughly 1 pound of crystal

methamphetamine hidden inside several layers of packaging. The UC and TORRES had several

conversations regarding pick up of the parcel using the TARGET TELEPHONE and 302-382-

0940, including TORRES sending the UC a screenshot of the tracking information of the parcel

on May 7, which continued to say that it was on its way to the intended destination, despite it

having already been seized by law enforcement and found to contain crystal methamphetamine.

Ultimately, UPS marked the package as lost.

*May 18, 2021 Discussion Between UC and TORRES using the TARGET TELEPHONE for 2*

*pound Delivery of Methamphetamine*

24.  After the UC never obtained the crystal methamphetamine that the UC purchased

from TORRES, the UC and TORRES began to discuss a second shipment of methamphetamine

to recompense the UC for the $4,000 the UC had already paid. On May 18, 2021, TORRES used

the TARGET TELEPHONE to have a conversation with the UC wherein TORRES told the UC

that he was going to discuss with his contacts in California shipping a replacement package

containing two pounds of methamphetamine and that he would let the UC know when the

package was scheduled to arrive.

*June 4 Delivery of Methamphetamine from TORRES to the UC*

25.  Beginning on June 2, 2021, TORRES began to discuss with the UC that he would have

a replacement pound of methamphetamine available for the UC on June 4 for the UC to pick up.

On June 2 and June 3, TORRES had multiple calls with the UC discussing the incoming package

of methamphetamine. The UC picked up the package from TORRES on June 4, 2021 and

verified that it contained 1 pound of crystal methamphetamine.

*January 8, 2022 discussion of future Methamphetamine Purchase between TORRES and the UC*

*using the TARGET TELEPHONE.*

26.  On January 8, 2022, TORRES utilized the TARGET TELEPHONE in order to discuss a

future methamphetamine purchase with the UC.  During the discussion TORRES told the UC he

has methamphetamine at a stash house in Wilmington, Delaware.  From my training and

experience a stash house is a location that drug dealers store their narcotics.  TORRES told the

UC that he can go anytime to the stash house to get the methamphetamine for the UC.  TORRES

also told the UC that he has marijuana available to sell to the UC as well.  TORRES told the UC

that the marijuana is being stored at his residence.  TORRES' residence is located at 9276 South

Mayhew Drive, Lincoln, Delaware 19960 .

## CONCLUSION

27.  Based on the information set forth in this affidavit, I submit that there is probable

cause to believe that the TORRES is using the TARGET TELEPHONE to coordinate the

distribution of methamphetamine.

28.  I also submit that there is probable cause to believe that locating the geographical

position and movements of the TARGET TELEPHONE will assist law enforcement in

identifying the location of the shipments of methamphetamine the TORRES has and possibly his

co-conspirators as they engage in criminal activity as well as meeting locations, and storage

locations of illegal drugs and/or proceeds from illegal drug distribution.

29.  Your affiant knows that drug traffickers will commonly use multiple phones and

also use another person's name and address as the subscriber for their phone(s) in an effort to

circumvent detection from law enforcement. Drug dealers believe, based in my training and

experience, that if they compartmentalize their conversations by having them on multiple

phones, law enforcement cannot uncover their entire operation by obtaining a wiretap on any one

device. Drug dealers also change phones and/or phone numbers often. Drug dealers may travel

with both telephones, but may not always have both phones on them, and they also may "drop"

or change one phone before they change another. The data collected by locating the

geographical position of movements of the TARGET TELEPHONE will significantly help the

investigation into the drug trafficking organization of TORRES, and any co-conspirators.

30. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C.,

Section 2703(c)(1)(A), it is requested that the Court issue a warrant authorizing the acquisition of

the Requested Information and directing Verizon, the service provider for the TARGET

TELEPHONE, to initiate a signal to determine the location of the TARGET TELEPHONE on

the service provider's network or with such other references points as may be reasonably

available and at such intervals and times as directed by the law enforcement agent serving the

proposed order, and to furnish the technical assistance necessary to accomplish the acquisition

unobtrusively and with a minimum of interference with such services as that provider accords the

user(s) of the TARGET TELEPHONE, for a period of thirty (30) days, such acquisition to

commence within ten (10) days of the date of the Order. Reasonable expenses incurred pursuant

to this activity will be processed for payment by the DEA.

IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any

time of the day or night, owing to the potential need to locate the TARGET TELEPHONE

outside of daytime hours.

IT IS FURTHER REQUESTED that the Court authorize me, or my designee, to fax or

scan and send this application and search warrant to Verizon and that you authorize me to allow

the phone company's employees and/or agents to conduct the actual search of their records and

seize said evidence and then provide the relevant documents to this affiant for subsequent review

and use. Additionally, I request that the Court allow me, my agent or designees, to include law

enforcement and non-law enforcement personnel, to search, seize, review and use all information

provided.

IT IS FURTHER REQUESTED that the warrant and this Affidavit be sealed until further

order of the Court in order to avoid premature disclosure of the investigation, guard against

flight, and better ensure the safety of agents and others, except that two (2) certified copies

should be made available to the United States Attorney's Office for service upon Verizon.

IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of thirty (30) days after the termination of the monitoring period authorized by the warrant.

Respectfully submitted,

*Christopher Thiel*

Christopher Thiel, Special Agent
Drug Enforcement Administration.

Sworn to before me this 10th day of January 2022.

*Christopher J. Burke*

Honorable Christopher J. Burke
United States Magistrate Judge

## **ATTACHMENT A**
**Property to Be Searched**

1. This warrant applies to records and information associated with the cellular telephone assigned call number 302-841-7963 (TARGET TELEPHONE), whose wireless service provider is **Verizon**, a company headquartered at 1095 Avenue of the Americas, New York, New York, 10036.

2. Records and information associated with the TARGET TELEPHONE that is, or will be (within the authorized periods of the warrant), within the possession, custody, or control of **Verizon**, including information about the location of the TARGET TELEPHONE and including if the TARGET TELEPHONE is subsequently assigned a different call number.

## **ATTACHMENT B**
### **Particular Things to be Seized**

**I. Information to be Disclosed by Verizon**

      To the extent that the information described in Attachment A is within, or will be within (within the authorized period of the warrant), the possession, custody, or control of **Verizon**, including any information that has been deleted, but is still available to **Verizon**, or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), **Verizon** is required to disclose to the government the following information pertaining to the TARGET TELEPHONE listed in Attachment A, pursuant to 18 U.S.C. § 2703(c)(1)(A), and Federal Rule of Criminal Procedure 41:

      a. The following information about the customers or subscribers associated with the TARGET TELEPHONE for the time period June 1, 2021 to Present:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial

Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile

Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"),

Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services

Digital Network Number ("MSISDN"); International Mobile Subscriber Identity

Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol

("IP") address);

viii. Means and source of payment for such service (including any credit card

or bank account number) and billing records;

ix. Upon oral or written request of the Drug Enforcement Administration ("DEA"),

the names, addresses, billing and credit information of the subscribers of record,

whether published or non-published, as well as a call history detailed report (with

cell towers (i.e. antenna towers covering specific geographic areas) and sectors

(i.e. faces of the towers)) for all incoming and outgoing telephone calls, packet

data, and SMS/MMS to or from the Target Telephone (as revealed from the

review of historical records obtained pursuant to this warrant) for the thirty (30)

days prior to the date of the warrant; and

x. All records and other information (not including the contents of communications)

relating to wire and electronic communications sent or received by the Target

Telephone, including:

(A) the date and time of the communication, the method of the

communication, and the source and destination of the communication

(such as the source and destination telephone numbers (call detail

records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received),

and/or the specific latitude and longitude of the Target Telephone, such as Enhanced 911 (E-911), mobile locator tool, ping, or any other cellular network provider specific/proprietary name for the location based service, such as Per Call Measurement Data (PCMD), Range to Tower (RTT), or Network Event Location System (NELOS).

b. Information associated with each communication to and from the Target Telephone, without geographic limitation, for a period of thirty (30) days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication;

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Telephone will connect at the beginning and end of each communication, and during the progress of the call if available, and/or the specific latitude and longitude of the Target Telephone, such as Enhanced 911 (E-911), mobile locator tool, ping, or any other cellular network provider specific/proprietary name for the location based service, such as Per Call Measurement Data (PCMD), Range to Tower (RTT), or Network Event Location System (NELOS); and

v. Upon oral or written request of the DEA, the names, addresses, billing and credit information of the subscribers of record, whether published or non-published, as well as a call history detailed report (with cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers)) for all incoming and outgoing telephone calls, packet data, and SMS/MMS to or from the Target Telephone (as revealed from the installation and use of the pen register and trap and trace device authorized by the warrant) for the thirty (30) days prior to the date of the warrant.

c. Information about the location of the Target Telephone, without geographic limitation, for a period of thirty (30) days, during all times of day and night, including all available Enhanced 911 (E-911) Phase II data, GPS data, latitude-longitude data (including the specific latitude and longitude of the Target Telephone) or other precise location information, mobile locator tool, ping, or any other cellular network provider specific/proprietary name for the location based service, such as Per Call Measurement Data (PCMD), Range to Tower (RTT), or Network Event Location System (NELOS).

d. **Verizon** shall furnish the DEA with all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with **Verizon's** services, including by initiating a signal to determine the location of the Target Telephone on **Verizon's** network or with such other reference points as may be reasonably available, at such intervals and times directed by the DEA. The DEA shall reasonably compensate **Verizon** for reasonable expenses incurred in furnishing such facilities or assistance.

e. Reasonable cause exists to permit the execution of the requested warrant at any time in

the day or night. Therefore, **Verizon** shall furnish the DEA with all information, facilities, and technical assistance necessary to accomplish the collection of the

information described in Attachments A and B, day or night, twenty-four (24) hours a day, seven (7) days a week.

f. This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

g. Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an Order under 18 U.S.C. § 3123 and the DEA may install, or cause to be installed, and use a pen register and trap and trace device on the Target Telephone and receive all information from such installation, including prospective cell-site location information.

h. This warrant does not authorize the seizure of any tangible property.


**II. Information to be Seized by the Government**


All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(c), and 846 involving unidentified subjects, as well as all information described in Section I that will assist in locating the TARGET TELEPHONE for purposes of identifying stash locations, identifying other members of the unidentified subject's drug trafficking organization, and assisting officers in surveillance. Such information includes information related to: (1) the names and phone numbers of suspected associates; (2) the pattern and location of the TARGET TELEPHONE's movements; (3) the identity of a target's usual locations, including houses where the target may reside or hide; and (4) any other evidence that

would aid the DEA in investigating the target and the stated crimes.